TRUSTEES OF THE SMITH CHARITIES *vs.* INHABITANTS OF NORTHAMPTON & others.

A testator left a large estate to trustees, making provision for the selection by them of certain boys to be bound out as apprentices on certain terms and conditions, until their arrival at the age of twenty-one years, each of whom, at any time within six years thereafter, if he should have conducted himself well and faithfully meanwhile, should at the discretion of the trustees receive a loan of money from the income of the trust fund, not exceeding five hundred dollars, for a term not over five years, on his furnishing good security for the repayment of the same at the expiration of said term, with interest; and providing further, that if at the end of said term the interest should have been punctually paid, and the conduct of the borrower should have been such as to satisfy the trustees that he would in future make a good use of the money, the obligation should be cancelled and given up, without the payment of the principal. *Held*, that the trustees have no authority to cancel and surrender, without the payment of the principal, any such obligation to the legal representatives of a borrower who has died before the expiration of five years from the time of the loan to him.

A testator, in devising an estate to trustees for charitable purposes, provided that the trustees should be elected annually as follows: that eight towns, which were named, should annually choose in town-meeting one elector each, who should meet and elect by a majority vote three trustees. Until after the testator's death, a majority had always been necessary for the election of public officers in Massachusetts. *It seems*, under these circumstances, that a majority is required for the election of a trustee, although other officers are now elected by a plurality.

BILL IN EQUITY by the trustees of the Smith Charities, seeking instructions upon certain points arising under the will of Oliver Smith.

Concerning the first point decided by the court, the facts are sufficiently set forth in the opinion.

Concerning the second point, the bill alleged that the plaintiffs are a corporation, established under *St.* 1849, *c.* 96, for the purpose of dispensing certain charities under the said will; that the testator provided for the due election of a board of trustees thus " And I hereby order and direct that the said board of trustees shall be appointed and constituted in manner following: The several towns of Northampton, Hadley, Hatfield, Amherst and Williamsburgh in the county of Hampshire, and Deerfield, Greenfield and Whately in the county of Franklin, shall annually, in the month of March or April, at a legal town-meeting (an article to that effect being inserted in the warrant therefor,

choose one person, being an inhabitant thereof, as agent for said town, to be called an elector. And the several electors thus chosen, such choice being duly certified, shall meet at Northampton on the first Wednesday in May annually; and shall then and there elect, by a majority of the votes given in, three suitable persons to act as trustees of said funds; and the persons thus elected shall constitute the board of trustees; and shall hold their office for one year, and until others are chosen in their stead."

The bill further alleged that in May 1864 two persons appeared at the meeting of the electors, each claiming to be the elector of Deerfield, one of whom had been chosen by a plurality vote, and the other by a majority vote, at a subsequent meeting; and that grave doubts had arisen respecting the true construction of the will in this respect, and the trustees had voted to ask the opinion of this court thereon.

The various towns named and the attorney general were made defendants. The will was proved in 1847. The case was reserved for the determination of the whole court.

*C. Delano*, for the plaintiffs.

No counsel appeared for the defendants.

BIGELOW, C. J. Upon one of the questions stated in the bill, which has arisen in the course of the administration of the trusts committed to the plaintiffs, we entertain no doubt of the power or duty of this court to give to the trustees the aid and direction which they seek. Whenever a doubt or difficulty exists in the disposition of funds held by trustees, arising from the ambiguity of a will or other instrument by which the trust is created, or from an omission by a testator or settlor to make clear and adequate provision for all the contingencies which may arise in the practical administration of a trust, a court of equity may be properly called on by trustees to explain and interpret that which is obscure, and make certain by judicial exposition that which is doubtful, in order that they may be duly protected in the performance of their duties, and the rights of all parties interested in the trust may be properly guarded and secured.

By the allegations in the bill, it appears that a doubt has

already arisen and is likely again to occur concerning the ex-
tent of the authority of the trustees in the disposition of a cer-
tain portion of the trust funds in their hands, and that they
cannot proceed in the performance of their duty with safety or
a due regard to the rights and interests of the beneficiaries under
the will, until this doubt is judicially solved. This part of the
case seems to us to present a practical question arising in the
course of the administration of the trust, which renders it
proper for the court sitting in equity to hear and determine it.

This question may be stated thus : By a clause in the testa-
tor's will, he made provision for the selection of certain boys by
the trustees, to be bound out as apprentices on certain terms and
conditions by him specified, until their arrival at the age of
twenty-one years, and in relation to the boys thus selected and
bound out he made this further provision : " Each of said boys
who shall have been bound out as aforesaid, and who shall
apply therefor at any time within six years after his arriving at
the age of twenty-one, and who shall have conducted himself
well and faithfully during his apprenticeship, and also until the
time of such application, shall at the discretion of said trustees
receive a loan of money from the income of this fund, not ex-
ceeding five hundred dollars, for a term not over five years, on
his furnishing good and satisfactory security for the repayment
of the same at the expiration of said term, with the interest
thereon annually. And if at the end of the said term the inter-
est shall have been punctually paid, and the conduct of the bor-
rower shall have been such as to satisfy the said trustees that he
will in future make a good use of the money, the obligation
shall be cancelled and given up without the payment of any fur-
ther sum than the interest aforesaid."

In pursuance of this provision, the trustees have made loans
to persons coming within the terms and conditions described in
the will, and in the course of their duty will hereafter be con-
stantly called on to make other loans of a similar character.
But it has already happened and is likely again to occur that
meritorious persons to whom such loans have been made, and
who have given to the trustees notes or obligations as directed

Trustees of the Smith Charities v. Inhabitants of Northampton & others.

by the will, have died before the expiration of the term of five years, having in all respects conducted themselves in such manner as to make it reasonably probable that after the lapse of said term of five years, had they lived, they would have been entitled to receive their notes or obligations cancelled as provided by the testator. In this class of cases, the trustees allege that, if they had been satisfied that it was within the discretion vested in them by the will, they should in some instances have felt it to be their duty to surrender and give up the notes or obligations held by them at the death of the beneficiaries to their heirs at law, legal representatives or appointees, without exacting payment thereof. It is on this point that the trustees seek the aid and direction of the court; that is, they seek to be advised whether it is within the due and proper exercise of the discretion vested in them under the will, to cancel and give up the notes or obligations in their hands to the heirs, representatives or appointees of said beneficiaries, in case of their death before the expiration of the term aforesaid, if the trustees should deem it just and equitable so to do.

This question is to be determined upon an interpretation of that part of the will which creates the particular trust under consideration. There is no other clause which has any bearing upon it. It is too clear to admit of doubt that we cannot, in the exercise of the power of judicial exposition, insert in the will any provision which the testator has omitted, or supply defects or reform or modify his scheme of charity, if it is plainly set forth and capable of execution. It is only where the objects and purposes of a charity are likely to fail in part or in whole, or they are left uncertain and indefinite, that a court of equity will appropriate funds in a manner not directed by the testator. On consideration of the clause of the will under which this question has arisen, it seems to us to leave no room for the exercise, by a court of equity or by the trustees, of any power not expressly conferred by the testator. The clause of the will is clear and explicit, and the intent of the testator is plain. The notes and obligations taken and received by the trustees for loans to the persons designated by the will, together with the

interest which should accrue thereon, are to continue a **part** of the trust fund and be held as such by the trustees until the expiration of the prescribed term. It is then, and then only that the contingency arises on the happening of which the trustees, in the exercise of the discretion vested in them, are authorized to cancel and surrender the notes and obligations, and thereby to appropriate to the beneficiaries a certain amount of the principal of the trust fund in their hands. We cannot say that the contingency of the death of the beneficiaries during the term was not in the contemplation of the testator, and that he did not *ex industria* intend to exclude it by omitting any provision that on the happening of such event the trustees might exercise a discretion as to the surrender of the obligations held by them to the heirs or other representatives of the deceased. In an instrument so carefully drawn and so full of details as the will of the testator, it is difficult to believe that an omission to provide for an event so probable and frequent as the death of some of the beneficiaries, during the existence of loans to them, was likely to be, should have escaped his attention. The more probable inference is, that he intended to fix an absolute, definite term of time during which the habits and conduct of the objects of his bounty should be thoroughly tried and tested, until the expiration of which no right to the enjoyment of the principal should accrue to any one. We are therefore of opinion that there is no discretion vested in the trustees as to the disposition of the notes and obligations which they may hold under the clause above cited, except that which they are expressly authorized to exercise at the expiration of the time specified in the will.

This is not a case for the application of the doctrines of *cy pres*, because there is no failure of the objects and purposes for which the fund was established, and no uncertainty as to the mode of its application. It is not a case of a mixture of a trust and power, where the court can be called on to aid a defective or improper execution of a power. The testator did not merely sketch the outline of the trust which he created, and leave the full extent of its operation to be filled up at the discretion

of the trustees. The trust and the power are distinctly defined and limited. Nor is it a case where the will contains a provision of forfeiture, or in the nature of a forfeiture. The testator contemplated loans which were to be made on certain terms, and which were to be repaid, except on the happening of a certain contingency expressly declared and specified.

Upon the other question stated in the bill, on which the trustees seek for aid and advice, we entertain great doubts whether such a case is stated as to render it proper for us to express an opinion. Not only is there no actual question now raised as to the mode of choosing electors under the third section or clause of the will, but it is not made to appear that, if raised, it would seriously hinder the trustees from the proper discharge of their duties, or prevent in any respect the due and orderly execution of the trusts. This part of the bill rests not upon any existing fact, nor upon any allegation that the question suggested is certain to arise. It is founded solely on an apprehension that at some future period delays, inconveniences and embarrassments may be occasioned by an event which has already occurred once, and may happen again at some uncertain period of time. See *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393, 414. But the graver difficulty is, that, as the case is now presented, we have no one made party to the bill who has a direct and immediate interest in the determination of the question. If the contingency should hereafter happen by which a person should claim the office of elector by the choice of a plurality of votes, his right to claim the office could not be precluded by any adjudication which we may make in this case. In the expression of any opinion on the question now, we cannot undertake definitively to adjudicate upon it, so as to exclude its reconsideration hereafter.

But as this is a bill filed by the trustees of a great public charity, in which they express serious apprehension of difficulties which may arise in consequence of doubts which exist in the interpretation of the will, as to the mode in which electors are to be chosen, we do not feel at liberty entirely to withhold the expression of our opinion on the point submitted to us. Having regard to the fact that in all elections within this

commonwealth at the date of the will, and of the death of the testator, a majority of votes was necessary to the choice of town, state and other officers, and that the testator, in the same section of his will, in prescribing the rule for the election of trustees by the electors, required that they should be chosen by a majority, we are strongly inclined to the opinion that he intended that the electors should be chosen according to the mode which then prevailed in all public elections, and which was sanctioned by law. In construing a will, it is always competent to arrive at the intention of the testator by having regard to the surrounding circumstances and existing facts at the time the will was made, which have a bearing on the subject matter of the provisions of the will.